**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| LEVI WATSON, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-07-4104 |
| | § | |
| | § | |
| TRAVIS SOFTWARE CORP. *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

In this suit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, Levi Watson and Tamera Hollen allege that the defendants, their former employer, Travis Software Corp., and its president, Alan Williams, failed to pay support representatives overtime when they worked more than forty hours in a work week. Watson and Hollen move under 29 U.S.C. § 216(b) for "conditional certification of and notice to" a class consisting of current and former support representatives employed by Travis Software during the past three years. (Docket Entry No. 16 at 10; Docket Entry No. 18). Jennifer Bell, another support representative, filed a notice of consent to opt in to the class. (Docket Entry No. 15).

The defendants respond that Watson and Hollen have failed to show that they are "similarly situated" to the putative class members and that the number of members is too small to support collective-action treatment. The defendants argue in the alternative that if conditional certification is granted, the class period should end on August 22, 2006, the last

day that either Watson, Hollen, or Bell – the current plaintiffs – worked at Travis Software. (Docket Entry No. 17).  Watson and Hollen have replied.  (Docket Entry No. 18).

Based on a careful review of the pleadings, the motion, response, and reply; the present record, and applicable law, this court grants the motion for notice and conditional certification.  The class is defined as service representatives who received a paycheck from Travis Software between November 21, 2005 and November 21, 2008.  The reasons for this ruling are set out below.

## I.     Background

Travis Software provides computer programs designed to aid employers in administering employee benefit plans.  Watson, Hollen, and Bell worked as support representatives[1] at Travis Software.  Watson worked from December 2004 until his discharge on July 24, 2006; Hollen worked from March 2004 to August 22, 2006, when she resigned; and Bell worked from March 9, 2005 to November 3, 2005.

Support representatives assisted customers through telephone and email.  Regular work hours for support representatives were 8:00 a.m. to 4:30 p.m. Monday through Friday. Throughout the work day, all communications between support representatives and customers were logged into a computer system.  At the end of each day, supervisors would "review all work the . . . support representative performed that day by reading a print-out of

---

[1] The plaintiffs initially referred to the support representative position as "technical support representative," but the defendants' opposition clarifies that the formal title for the position was "support representative."  (Docket Entry No. 17, Ex. A).  The plaintiffs have accepted this terminology.  (Docket Entry No. 18 at 2).

the representative's log" from the computer system, and would discuss the results of this review in one-on-one sessions with the support representatives. (Docket Entry No. 16 at 2-4). Watson and Hollen allege that "[u]ntil this one-on-one review session occurred, a . . . support representative was not allowed to leave for the day," and that this one-on-one session and related delay added approximately one hour to each support representative's typical work day. (*Id*. at 4). Watson and Hollen also allege that "[t]echnical support representatives often had to continue working once they arrived home, in an attempt to try to resolve that day's issues or questions, in order to provide the customers with timely feedback and/or resolution," and that it was "a requirement, not an option," to "work weekends whenever it was determined that such work was needed." (*Id*. at 4-5). Weekend work "was generally performed in a group on company premises." (*Id*. at 11). Watson and Hollen attach as an exhibit to their motion for conditional certification a want ad Travis Software posted on a job search site. The ad describes the support representative position and states that applicants should be "[w]illing to work occasionally on the weekend or evening." (*Id*., Ex. A-1). Watson and Hollen allege that no support representatives were paid overtime for additional hours worked. They also allege that "they were told they were not entitled to overtime pay because they were salaried." (*Id*. at 5).

Watson and Hollen allege that they are similarly situated to the putative class members because all were "support representatives employed by [Travis Software] at the same location, reporting to the same supervisors, and performing the same job duties." (*Id*.

3

at 10).  They assert that all putative class members were paid a salary "in the high 20's, based upon experience."  (*Id*. at 12).

Watson was a support representative for most of the time he worked at Travis Software.  During the last four months, Watson was promoted to the position of "team leader" for the support department.[2]  (Docket Entry No. 16, Ex. A).  The defendants assert that in this position, Watson was responsible for managing and supervising at least two support representatives and that his responsibilities included hiring, firing, training, and apportioning work.  (Docket Entry No. 17, Ex. B).  Watson asserts that the promotion did not change his primary duties or pay.  (Docket Entry No. 16, Ex. A).

Hollen worked as a support representative for over a year and a half of the two and a half years she was at Travis Software.  In October 2005, Hollen was promoted to the position of "training and support liaison."[3]  (*Id*., Ex. B).  The defendants assert that in this position, Hollen was responsible for creating and updating training materials for software, training customers and employees on the software, and coordinating the installation and integration of the software programs onto customers' computer systems.  (Docket Entry No. 17, Ex. B).  Hollen states that even after this promotion, she kept the job duties of a support

---

[2] The plaintiffs initially referred to Watson's position as "support team lead," but the defendants assert that "team leader" is the proper job title.  (Docket Entry No. 17, Ex. B).

[3] The plaintiffs initially referred to Hollen's position as "training and implementation liaison," but the defendants assert that "training and support liaison" is the proper job title. (Docket Entry No. 17, Ex. B).

4

representative and fulfilled these duties along with her new responsibilities.  (Docket Entry

No. 16, Ex. B).

The defendants argue that Watson and Hollen are not similarly situated to each other

or to the putative class of support representatives.  They argue that after their promotions,

"[p]laintiff Watson's and [p]laintiff Hollen's roles and duties . . . were unique to each of

them."  The defendants assert:

> Unlike Plaintiff Watson, Plaintiff Hollen did not customarily
> and regularly manage the work of two or more full time
> employees.  Plaintiff Hollen also did not have the authority to
> hire or fire employees.   Likewise, the other Support
> Representatives in the Support Department did not manage the
> work of other Support Representatives or have the authority to
> hire or fire Support Representatives.  Unlike Plaintiff Hollen,
> Plaintiff Watson generally did not draft and update Travis
> Software's training materials or coordinate the scheduling and
> implementation of Travis Software's programs on its customers
> [sic] systems.   The Support Representatives also did not
> generally perform these types of duties.

(Docket Entry No. 17 at 11).

According to the defendants, "this [c]ourt will . . . be required to conduct an

individualized inquiry into the day to day activities of each of the Support Representatives

to determine whether they meet the administrative and/or computer professional exemptions

for some or all workweeks."  *Id.*  The defendants also argue that Watson has an inherent

conflict of interest because some putative class members would have been his subordinates.

In his supervisory role, Watson fired one member of the putative class and disciplined or

recommended the discharge of others.  (*Id.* at 13, Ex. B).  Watson and Hollen respond that

5

they need not be identically situated to the putative class members and that they are similarly situated.  They point out that they are seeking class certification only as to employees who worked as support representatives.  (Docket Entry No. 18 at 2).

## II.     The Legal Standard

Section 207(a) of the FLSA requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of forty hours in a work week.  29 U.S.C. § 207(a).  Section 216(b) creates a cause of action for employees against employers violating the overtime compensation requirements.  29 U.S.C. § 216(b).  Section 216(b) provides:

> An action  . . . may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id*.  Section 216(b) establishes an opt-in scheme under which plaintiffs must affirmatively notify the court of their intention to become parties to the suit.  *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir.1995) (overruled on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)).  District courts have discretion in deciding whether to order notice to potential plaintiffs.  *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170-171 (1989); *Villatoro v. Kim Son Rest., L.P.*, 286 F. Supp. 2d 807, 809 (S.D. Tex. 2003).

Courts recognize two methods to determine whether to authorize notice to similarly situated employees advising them of their right to join an FLSA collective action.  These

6

methods are the two-step approach in *Lusardi*, which imposes different and less stringent requirements than a Rule 23 class action, and the *Shushan* approach, which imposes the requirements of a Rule 23 class action. *See Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987); *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo. 1990). In *Mooney*, 54 F.3d at 1216, the Fifth Circuit found it unnecessary to determine which method is most appropriate. Since *Mooney*, however, the Fifth Circuit has acknowledged the inapplicability of Rule 23 to a § 216(b) action, holding that the interlocutory appeal provisions of Rule 23(f) do not apply in a § 216(b) action because a "216(b) FLSA action is not a rule 23 class action." *Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 932 (5th Cir. 2005).[4]

Most courts use the "two-step ad hoc approach" in *Lusardi* as the preferred method for the similarly-situated analysis rather than the Rule 23 requirements. *See Yaklin v. W-H Energy Servs., Inc.*, No. C-07-422, 2008 WL 1989795, at *1 (S.D. Tex. May 2, 2008) ("The prevailing analysis used by federal courts . . . is the two-stage test set forth in *Lusardi*."); *Treme v. HKA Enters., Inc.*, No. 07-1134, 2008 WL 941777, at *2 (W.D. La. Apr. 7, 2008) ("[A] review of the district court cases considering certification of an FLSA collective action reveals that a majority of the courts in this circuit have favored the two-stage *Lusardi* approach.") (citing cases); *Villatoro*, 286 F. Supp. 2d at 810; *see also Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n. 12 (11th Cir.1996) ("[T]he requirements for pursuing a §

---

[4]   The Fifth Circuit also discussed this distinction in a pre-*Mooney* opinion. In *Lachapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975), the Fifth Circuit cited "a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § [216(b)]."

216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23.").

The first stage of the *Lusardi* analysis is the "notice stage" in which the district court decides whether to issue notice to potential class members. *Mooney*, 54 F.3d at 1213-14. "*Lusardi* and its progeny are remarkable in that they do not set out a definition of 'similarly situated,' but rather they define the requirement by virtue of the factors considered in the [two-stage] analysis." *Id.* at 1213. The court's decision in this first stage is often based only on the pleadings and affidavits that have been submitted. *Id.* at 1213-14. "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class" that provides potential class members with notice and the opportunity to opt-in. *Id.* at 1214. Although lenient, this standard requires a factual basis for allegations that potential members "were together the victims of a single decision, policy, or plan . . . ." *Id.* at 1214 n. 8 (citing *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)); *see also Hall v. Burk*, No. Civ. 3:01-cv-2487, 2002 WL 413901, at *3 (N.D.Tex. Mar. 11, 2002) ("Unsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden.") (citing *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983)). At this first stage, there must be a showing of "some identifiable facts or legal nexus [that] bind the claims so that hearing the cases together promotes judicial efficiency." *Barron v. Henry County Sch. Sys.*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003) (citing *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 416 (D. Or. 2002)); *see also Villatoro*, 286 F. Supp. 2d at 810 ("Notice is appropriate when there is 'a

demonstrated similarity among the individual situations . . . some factual nexus which binds the named plaintiffs and the potential class members together as victims of an alleged [policy or practice.]'") (quoting *Crain v. Helmerich & Payne Int'l Drilling Co.*, No. Civ. A. 92-0043, 1992 WL 91946, at *2 (E.D. La. Apr. 16, 1992)). "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005); *see also Barron*, 242 F. Supp. 2d at 1104 ("[T]he mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences.").

If a court conditionally certifies a class, notice issues and the action proceeds as a collective action during discovery. *See Mooney*, 54 F.3d at 1214; *Jones v. Casey's General Stores*, 517 F. Supp. 2d 1080, 1086 (S.D. Iowa 2007) ("Formal notice to putative collective members in an FLSA action is provided after conditional certification has been approved by the court."); *Dominquez v. Minn. Beef Indus., Inc.*, No. 06-1002, 2007 WL 2422837, at *2 (D. Minn. Aug. 21, 2007) ("If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.'") (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001)).

The second stage typically occurs when discovery is largely complete and the defendant moves to "decertify" the conditionally certified class. *See Mooney*, 54 F.3d at 1214; *Lusardi*, 118 F.R.D. at 359. At that point, the court makes a factual determination as

9

to whether there are similarly situated employees.  *Id.*  If the district court finds that the claimants are similarly situated, the collective action may proceed.  *See Mooney*, 54 F.3d at 1214; *Villatoro*, 286 F. Supp. 2d at 810.  If the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice and the original plaintiffs proceed on their individual claims. *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 508 (M.D. La. 2005).

## III.   Analysis

### A.   Similarly Situated

This case is at the "notice stage" of the *Lusardi* analysis.  Because the parties have presented minimal evidence, in the form of affidavits, the decision whether to issue notice to potential class members is "made using a fairly lenient standard."  *Mooney*, 54 F.3d at 1214.  At this stage, a plaintiff must make a minimal showing that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit.  *See Prater v. Commerce Equities Mgmt. Co.*, No. H-07-2349, 2007 WL 4146714, at *4 (S.D. Tex. Nov. 19, 2007) (citing cases); *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008, at *5 (S.D. Tex. Jan. 24, 2007).  The defendants do not dispute the first and third elements of this first-stage analysis.  The defendants do not dispute that there is a reasonable basis to believe that aggrieved individuals exist who want to opt in to the lawsuit.[5]  The defendants

---

[5]  The defendants' response states: "Although Defendants dispute elements (1) and (3), for purposes of this Response only, Defendants do not contest elements (1) and (3)."

challenge only the second element, arguing that Watson and Hollen are not similarly situated to the putative class of support representatives.

To be similarly situated, putative class members must have been affected by a common policy, plan, pattern, or practice. *See, e.g., O'Brien v. Ed Donnelly Enters., Inc.*, No. 2:04-cv-00085, 2006 WL 3483956, at *3 (S.D. Ohio Nov. 30, 2006) (citations omitted). A plaintiff need only demonstrate a reasonable basis for the allegation that a class of similarly situated persons exists. *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007). "The court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated." *Holbrook v. Smith & Hawken, Ltd.*, 246 F.R.D. 103, 106 (D. Conn. 2007); *see also Berger v. Cleveland Clinic Found.*, No. 1:05-cv-1508, 2007 WL 2902907, at *20-21 (N.D. Ohio Sept. 29, 2007).

The defendants contend that Watson and Hollen are not similarly situated to each other or to members of the putative class because their promotions at Travis Software gave them unique job responsibilities and, in Watson's case, may create interests conflicting with class members whom he supervised, disciplined, or even fired. The defendants also assert that support representatives are not similarly situated to one another because the support representative position itself may be wholly or partially exempt from the coverage of the

_____

(Docket Entry No. 17 at 7 n. 1).

11

FLSA under the statute's exemptions for administrative and/or computer professionals.[6] (Docket Entry No. 17 at 11; Docket Entry No. 2 ¶¶ 49-51).

### 1.    The Issue of Unique Job Responsibilities

The defendants contend that because Watson was promoted to the position of "team leader" and Hollen was promoted to the position of "training and support liaison" toward the end of their respective tenures with Travis Software, the two are not similarly situated to each other or to the putative class of support representatives. (Docket Entry No. 17 at 9-11). In response, Watson and Hollen state that they are seeking conditional certification for a class of support representatives only. Because Watson and Hollen are seeking to serve as class representatives only as support representatives and are not as a team leader or training and support liaison, they argue that the requisite similarity is shown. (Docket Entry No. 18 at 2-4).

To the extent that Watson and Hollen seek overtime incurred after they were promoted to the team leader and training and support liaison positions, and ask that this overtime be included in calculating class damages, (Docket Entry No. 18 at 3-4), they have not shown

---

[6] The administrative exemption is described in 29 U.S.C. § 213(a)(1), which provides, in relevant part, that the FLSA's overtime protections do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity . . . ." The computer exemption is described in 29 U.S.C. § 213(a)(17), which provides, in relevant part, that the FLSA's protections do not apply to "any employee who is a computer systems analyst, computer programmer, software engineer, or other similarly skilled worker, whose primary duty is the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications . . . ."

that they are similarly situated to the class or each other.  Although Watson and Hollen assert that they continued to perform support representative duties after promotion, they also performed other duties.  Seeking overtime for their work after they were promoted is inconsistent with their stipulation that the class should only include support representatives. (*Id*. at 2).  Because of this stipulation, and because there are significant differences between the duties of support representatives and the duties of team leader and support liaison, Watson and Hollen cannot serve as representatives of a class of support representatives and seek overtime compensation as representatives and members of that class for their work in positions other than support representative.

To the extent Watson and Hollen are seeking to serve as representatives of a class of support representatives to recover overtime compensation for working as support representatives, they have made the necessary minimal showing that when they worked as support representatives, they were similarly situated to other support representatives.  Watson and Hollen have submitted affidavits stating that all support representatives worked together in the same office, had the same scheduled work hours, were required to stay an extra hour each day to complete a supervisory review process, and were required to work evenings and weekends. (Docket Entry No. 16, Exs. A, B).  All "were paid a straight salary, regardless of hours worked[, and] did not get paid for any hours worked over 40." (*Id*.).  The affidavits state that when support representatives "complained about lack of overtime pay, management consistently told [them] that [they] were not entitled to overtime to pay because [they] were salaried." (*Id.*).  Watson and Hollen have alleged and shown a factual basis for "a common

13

policy, plan, pattern, or practice," *O'Brien*, 2006 WL 3483956, at *3, through which Travis Software required its support representatives to work overtime without compensation. Watson and Hollen have also alleged and shown a factual basis for a substantial uniformity in their working conditions and in job duties. Under the lenient *Lusardi* standard, the record supports certification of a class of support representatives.

### 2.    The Issue of Conflict of Interest

The defendants argue that Watson is not a proper class representative because in his position as team leader, he supervised support representatives who could be opt-in plaintiffs. In support, the defendants cite *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1314-15 (M.D. Ala. 2002), in which the court refused to allow a foreman to represent a proposed class comprised of both other foremen and the crewmen they directly supervised. The defendants argue that, as in *White*, Watson's "interests are necessarily in conflict with those of the class he seeks to represent," and that he "cannot fairly represent employees whom [he] has discharged, disciplined, or recommended discharge from employment." (Docket Entry No. 17 at 13).

*White* is distinguishable from the present case. In *White*, the court refused to permit a foreman to represent a class composed of other foremen and the crewmen they supervised because the foremen were "responsible for reporting the hours worked by their crew" and "allegedly ha[d] an economic incentive to under-report the hours of their crew if the crew's production [fell] below 'norm,' as they receive[d] bonuses for being more efficient." *Id.* at 1314. The court found a conflict of interest because the foremen were "potentially complicit

14

in the allegedly unlawful practice of failing to report overtime" and might "be held individually responsible for the potential claims of crewmen." *Id*.  In the present case, there is no conflict of interest similar to that in *White*.   There is no allegation that after his promotion, Watson was responsible for reporting the hours worked by the support representatives he supervised or that he would have benefitted in any way from underreporting those hours.

The defendants also argue that Watson's interests are in conflict with those of the support representatives he supervised because he had the power to discipline them and because he fired one employee.  Because Watson seeks only to represent a class of support representatives and to recover only for the work he did as a support representative, he has interests coextensive with other support representatives.  There is no indication that the interests of Watson and of the putative class members – obtaining the maximum recovery for uncompensated overtime worked by support representatives – are not aligned.  It was the lack of alignment of interests, and not the possibility of personal animus, that explains the decision in *White*.

### B.    Class Size

Watson and Hollen stipulate that the potential class will range from 15 to 26 members. (Docket Entry No. 18 at 2).  The defendants argue that the small number of potential class members shows that "a collective action is not warranted in this case and will not further the interests of justice."  (Docket Entry No. 17 at 5-6).  The defendants cite no authority that imposes a numerosity requirement on a § 216(b) opt-in class.  In an FLSA § 216(b) collective

action, "the requirements of Rule 23 do not apply and no showing of numerosity, commonality, typicality and adequacy of representation need be made." *Vengurlekar v. Silverline Tech., Ltd.*, 220 F.R.D. 222, 229 (S.D.N.Y. 2003); *see also Thiebes v. Wal-Mart Stores, Inc.*, No. 98-802, 1999 WL 1081357, at *2 (D. Or. Dec. 1, 1999) ("The procedural protections of [Rule] 23 are generally not necessary for a § 216(b) class action because of that statute's opt-in requirement."); *Foster v. Food Emporium*, No. 99-cv-3860, 2000 WL 1737858, at *1 (S.D.N.Y. April 26, 2000).

Because numerosity is not a requirement for a collective action under the FLSA, the fact that the class in this case may include between 15 to 26 members does not weigh against certification. *See Roberson v. Danny Ontiveros Trucking*, No. Civ. 08-0552, 2008 WL 4809960, at **4-5 (E.D. Cal. Nov. 3, 2008) (sustaining collective action cause of action for class that potentially involved twelve plaintiffs, finding that "[t]he FLSA . . . does not impose a numerosity requirement"); *Prater*, 2007 WL 4146714, at *8 (granting conditional certification in § 216(b) action that "potentially involve[d] up to twenty plaintiffs"); *Aguayo v. Oldenkamp Trucking*, No. Civ. 04-6279, 2005 WL 2436477, at *12 (certifying class that potentially involved 34 plaintiffs, stating that "[n]umerosity is not a requirement for certification of the collective action under the FLSA.").

### C.   Class Period

The plaintiffs seek certification for a class of current and former support representatives at Travis Software whose claims accrued at any point during the three years before the date this court grants conditional certification and notice. Under the FLSA, a

16

claim "accrues anew with each paycheck," *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 127 S.Ct. 2162, 2186 n. 8 (2007); *Hashop v. Rockwell Space Ops. Co.*, 867 F. Supp. 1287, 1294 (S.D. Tex. 1994), so the plaintiffs' proposed class would include support representatives who received a paycheck from Travis Software at any point during the three years before issuance of notice is approved.  The defendants argue that the last date of the class period should be August 22, 2006, the date that Jennifer Bell was discharged.  This is the latest date any of the plaintiffs who have opted in so far worked at Travis Software.  The defendants also argue that a putative plaintiff's claims are not tolled until that plaintiff formally opts in, so the court should exclude claimants who received their last paycheck from Travis Software more than three years before their opt-in date.

The FLSA has a two-year statute of limitations, which extends to three years if the defendant's violation was willful:

> [A] cause of action [under the FLSA] may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

29 U.S.C. § 255(a).  The Supreme Court has interpreted the term "willful" to mean "that the employer either knew or showed reckless disregard as to whether its conduct was prohibited by the statute."  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  Filing a consent to suit tolls the statute of limitations.  *See Pivonka v. Bd. of County Comm'rs of Johnson County, Kansas*, No. 04-2598, 2005 WL 1799208, at *1 n. 1 (D. Kan. July 27,

2005); *Quintanilla v. A&R Demolition, Inc.*, No. 04-1965, 2005 WL 2095104, at *16 (S.D. Tex. Aug. 30, 2005). Courts have recognized that class certification is appropriately limited to workers employed by the defendant up to three years before the issuance of notice is approved. *Id.*; *see also In re Food Lion, Inc.*, 151 F.3d 1029, 1998 WL 322682, at **12-13 (4th Cir. June 4, 1998); *Hasken v. Louisville*, 234 F. Supp. 2d 688, 691 (W.D. Ken. 2002). The parties do not dispute that the class period in this case should start three years before the issuance of notice is approved, or November 21, 2005.

The parties do dispute the proper end date for the class period. The defendants argue that it should be the last day that any of the plaintiffs who have opted in at the present time worked at Travis Software, which would be August 22, 2006. The defendants' position runs contrary to recent case law. Under this case law, a class period running up to the date of notice is appropriate even if the named plaintiff was not employed at the defendant or even eligible for recovery on that date. *See Doucure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 373 (E.D.N.Y. 2008) (approving class period extending through date of notice despite the fact that the named plaintiff's eligibility for recovery ended a year and a half before the date of notice); *Simpkins v. Pulte Home Corp.*, 2008 WL 3927275, at *9 (M.D. Fla. Aug. 21, 2008) (approving class period extending through date of notice where named plaintiff ended employment over one year before date of notice); *Russell v. Wells Fargo & Co.*, 2008 WL 4104212, at *6 (N.D. Cal. Sept. 3, 2008). A class period covering the three years before the date this court approves conditional certification and notice is appropriate in this case.

The defendants also argue that this court should exclude from the class putative plaintiffs whose claims accrued more than three years before their opt-in date.  This is correct.  "The limitations period is not tolled with respect to . . . potential plaintiffs unless and until they opt in to the case."  *See Pivonka*, 2005 WL 1799208, at *1 n. 1; *see also Lewis v. ASAP Land Exp., Inc.*, No. 07-2226, 2008 WL 2152049, at *2 (D. Kan. May 21, 2008) ("Under the FLSA, the statute of limitations for willful violations is three years after the cause of action accrued . . . . [W]ith regard to individuals who have not yet joined the action, the maximum reach of the limitation period . . . would extend back only three years from the date of this order."); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-0715, 2007 WL 707475, at *7 (N.D. Cal. Mar. 6, 2007) ("[T]he limitations period for each putative member of [a] conditionally approved collective class [is] three years from the date he or she opted into the action."); *Hasken*, 234 F. Supp. 2d at 691 ("In a representative action under the FLSA, the statute of limitations continues to run as to each individual plaintiff until he or she files a written consent to become part of the action."); *Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1132-33 (D. Nev. 1999) ("[T]he action is not deemed commenced with respect to each individual plaintiff until his or her consent has been filed.").  Putative plaintiffs whose work at Travis Software ended more than three years before they opt in will not be permitted to join the class.

A class of support representatives employed at Travis Software is conditionally certified for the three-year period before this order, from November 21, 2005 through

November 21, 2008.  Plaintiffs whose claims accrued more than three years before their opt-in date will be excluded from the class.

## IV.   Conclusion

The plaintiffs have satisfied the "fairly lenient standard" of the first stage of the *Lusardi* analysis.  Conditional certification and notice is granted under 29 U.S.C. § 216(b) for a class defined as current and former support representatives who received a paycheck from Travis Software between November 21, 2005 and November 21, 2008.

SIGNED on November 21, 2008, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

20